## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| SHAWN K.,[1] | :   Case No. 2:24-cv-00380 |
|     Plaintiff, | : <br> :   District Judge Algenon L. Marbley |
| vs. | :   Magistrate Judge Caroline H. Gentry <br> : |
| COMMISSIONER OF THE SOCIAL | : |
| SECURITY ADMINISTRATION, | : <br> : |
|     Defendant. | : |

---

## REPORT AND RECOMMENDATION[2]

---

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income in October 2018. Plaintiff's claims were denied initially and upon reconsideration. After a hearing at Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not under a "disability" as defined in the Social Security Act prior to January 2, 2020, but also concluded that he became disabled beginning on that date. The Appeals Council denied Plaintiff's request for review of that decision, and Plaintiff filed an action with this Court.[3] The Court remanded the case to the Commissioner under Sentence Four of 42 U.S.C. § 405(g), pursuant to a joint

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

[2] *See* 28 U.S.C. § 636(b)(1). The notice at the end of this opinion informs the parties of their ability to file objections to this Report and Recommendation within the specified time period.

[3] Assigned to Judge Sarah D. Morrison, Case Number 2:22-cv-01970.

stipulation by the parties. The Appeals Council remanded the case pursuant to the District Court's order. The same ALJ held another hearing and again concluded that Plaintiff became "disabled" as defined in the Social Security Act beginning on January 2, 2020. The Appeals Council denied Plaintiff's request for review of that decision, and Plaintiff subsequently filed what is now his second action in this Court.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the Court to affirm the partially-favorable decision. For the reasons set forth below, the undersigned Magistrate Judge **RECOMMENDS** that the Court **REVERSE** the Commissioner's partially-favorable decision and **REMAND** for further proceedings.

## I.    BACKGROUND

Plaintiff asserts that he has been under a disability since November 17, 2017. At that time, he was forty-nine years old. Accordingly, Plaintiff was considered a "younger person" under the Social Security regulations. 20 C.F.R. §§ 404.1563(c), 416.963(c).[4] Plaintiff changed age categories and was a "person closely approaching advanced age" prior to the established disability onset date. 20 C.F.R. § 404.1563(d). Plaintiff has a "high school education and above." 20 C.F.R. § 404.1564(b)(4).

The evidence in the Administrative Record ("AR," Doc. No. 7) is summarized in the ALJ's decision ("Decision," Doc. No. 7-13 at PageID 3450-86), Plaintiff's Statement of Errors ("SE," Doc. No. 10), the Commissioner's Memorandum in Opposition ("Mem.

---

[4] The remaining citations will identify only the pertinent Disability Insurance Benefits Regulations, as they are similar in all relevant respects to the corresponding Supplemental Security Income Regulations.

In Opp.," Doc. No. 12), and Plaintiff's Reply Memorandum ("Reply," Doc. No. 13). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

## II.      STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

3

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

4

## III. FACTS

### A. The ALJ's Factual Findings

The ALJ was tasked with evaluating the evidence related to Plaintiff's applications for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security regulations. *See* 20 C.F.R. § 404.1520. The ALJ made the following findings of fact:

Step 1: Plaintiff has not engaged in substantial gainful activity since November 17, 2017, the alleged onset date.

Step 2: He has the severe impairments of lumbar degenerative disc disease, bilateral knee and hip osteoarthritis, seizure disorder, chronic obstructive pulmonary disease (COPD), obstructive sleep apnea, REM behavior disorder, idiopathic hypersomnia, and obesity.

Step 3: He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Prior to January 2, 2020, Plaintiff's residual functional capacity (RFC), or the most he could do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consisted of light work as defined in 20 CFR 404.1567(b), subject to the following limitations: "[Plaintiff could] occasionally stoop, kneel, crouch, crawl, climb ramps and stairs[,] and operate foot controls bilaterally. [Plaintiff] could not climb ladders, ropes[,] and scaffolds or work on uneven ground or flooring. [Plaintiff] had to avoid concentrated exposure to extreme heat and pulmonary irritants as well as all exposure to unprotected heights, moving mechanical parts and no commercial driving."

Since January 2, 2020, Plaintiff's RFC has consisted of light work as defined in 20 CFR 404.1567(b), subject to the following limitations: "[Plaintiff] can stand/walk up to 2 hours in an 8-hour workday. [Plaintiff] can occasionally stoop, kneel, crouch, crawl, climb ramps and stairs[,] and operate foot controls bilaterally. [Plaintiff] cannot climb ladders, ropes[,] and scaffolds or work on uneven ground or flooring. [Plaintiff] must to [sic] avoid concentrated exposure to

5

extreme heat and pulmonary irritants as well as all exposure to unprotected heights, moving mechanical parts and no commercial driving."

Prior to January 2, 2020, Plaintiff was capable of performing his past relevant work as an executive chef, as that job was generally performed in the national economy.

Since January 2, 2020, Plaintiff has been unable to perform any of his past relevant work.

Step 5: Since January 2, 2020, considering his age, education, work experience, and RFC, there have been no jobs in significant numbers in the national economy that Plaintiff can perform.

(Decision, Doc. No. 7-13 at PageID 3455-73.) These findings led the ALJ to conclude

that Plaintiff was not disabled prior to January 2, 2020 but has been disabled since that

time. (*Id.* at PageID 3473-74.)

**B.     State Agency Medical Consultants**

State agency medical consultant William Bolz, M.D. completed a Disability

Determination Explanation form in February 2019. (AR, Doc. No. 7-3 at PageID 519-

30.) After summarizing the evidence reviewed (*id.* at PageID 521-22, 524-25), Dr. Bolz

concluded: "Symptoms appear consistent with the evidence in the file."[5] (*Id.* at PageID

528.) Dr. Bolz cited Plaintiff's complaints about standing and walking limitations that

were made during an "[activities of daily living] call." (*Id.*) He also cited the degenerative

changes that were documented on lumbar spine and right hip x-rays, Plaintiff's treatment

---

[5] In response to a question about the consistency of Plaintiff's "statements regarding symptoms considering the total medical and non-medical evidence" in the file, the form states: "Partially Consistent." (AR, Doc. No. 7-3 at PageID 562.) However, this conclusion appears to relate to the psychological consultants' explanation that although Plaintiff said he did not want to be around people, "he goes to the American Legion [five times] a week." The psychological consultant concluded: "[Symptoms] appear partially consistent with the [medical evidence of record]."

for sleep issues, and Plaintiff's BMI of 47.82, which Dr. Bolz said would "likely exacerbate" the sleep issues. (*Id.*)

Dr. Bolz opined that Plaintiff could lift and/or carry up to twenty pounds occasionally and ten pounds frequently, stand and/or walk for a total of two hours in an eight-hour workday, and sit for approximately six hours in an eight-hour workday. (AR, Doc. No. 7-3 at PageID 529.) Dr. Bolz based the two-hour standing and walking limitation on "morbid obesity and back pain." (*Id.*) Dr. Bolz opined that Plaintiff should never climb ladders, ropes, or scaffolds and only occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. (*Id.* at PageID 529-30.) Dr. Bolz also opined that Plaintiff needed to avoid all exposure to hazards, including heights and commercial driving. (*Id.* at PageID 530.)

Mehr Siddiqui, M.D. reviewed the updated record and completed a Disability Determination Explanation form at the reconsideration level in August 2019. (AR, Doc. No. 7-3 at PageID 552-65.) After summarizing the evidence (*id.* at PageID 552-57, 559-60), Dr. Siddiqui concurred with Dr. Bolz's conclusion that Plaintiff's reported symptoms appeared consistent with the medical evidence. (*Id.* at PageID 562.) Dr. Siddiqui also concurred with and adopted the exertional and non-exertional limitations identified by Dr. Bolz. (*Id.* at PageID 563-65.) Dr. Siddiqui explained that the two-hour standing and walking limitation was "due to morbid obesity, moderate [degenerative joint disease of the right] knee, mild [degenerative joint disease of the left] knee, mild [degenerative joint disease of the bilateral] hips, and [degenerative disease of the] lumbar spine and back pain." (*Id.* at PageID 564.) Dr. Siddiqui further opined that Plaintiff was limited to

7

occasional operation of bilateral lower extremity controls, as well as pushing and pulling with the lower extremities. (*Id.*) Dr. Siddiqui also opined that Plaintiff needed to avoid concentrated exposure to pulmonary irritants such as fumes, odors, dusts, gases, and poor ventilation. (*Id.* at PageID 565.) He cited evidence related to Plaintiff's recent diagnosis of COPD, use of a BiPAP machine for obstructive sleep apnea, and history of nocturnal seizures. (*Id.*)

The ALJ concluded that Dr. Bolz's and Dr. Siddiqui's opinions were only "partially persuasive" for the period prior to January 2, 2020. (Decision, Doc. No. 7-13 at PageID 3468-69.) The ALJ explained:

> [T]heir opinions are generally consistent with the underlying available
> medical evidence of record prior to the alleged onset date and further
> consistent with subsequently developed evidence prior to January 2, 2020,
> demonstrating stable findings on imaging as well as clinical physical and
> examinations longitudinally chronicling generally preserved motor,
> musculoskeletal, neurologic . . . and respiratory . . . functioning, and an
> overall course of conservative outpatient treatment without the need for
> surgical intervention to support any further reductions in his residual
> functional capacity prior to January 2, 2020.

(*Id.* at PageID 3469.) However, the ALJ concluded that the two-hour standing and walking limitation was "not . . . supported prior to January 2, 2020." (*Id.*) The ALJ addressed Plaintiff's use of a cane and found that it was not medically necessary. (*Id.*) She described the relevant complaints and objective examination findings in records dated prior to January 2, 2020, as follows:

> While [Plaintiff] was prescribed a cane in May 2019, the objective evidence
> around that time fails to document signs or symptoms supporting the
> necessity for this prescription (Exhibit 16F). Moreover, contrary to
> [Plaintiff's] testimony that he has needed a cane since that time, subsequent
> progress notes do not document consistent use of an assistive device,

8

suggesting it was not medically necessary (e.g., Exhibits 21F, 27F, 31F; see also 12F, 21F/484 [normal gait and no cane in prior exams]). [Plaintiff] was not noted to have difficulty standing or walking nor did he appear to use a cane at many visits in July through December 2019; examinations noted no musculoskeletal or neurological problems and he was in no distress (Exhibits 27F/3, 6, 9, 13; 30F/2, 4). In late 2019, [Plaintiff], at times, entirely denied musculoskeletal symptoms (Exhibit 24F/16, cf. 24F/99 [antalgic gait after the established onset date]). [Plaintiff] was noted to walk with a cane at VA visits in July and December 2019, but no abnormalities were noted to support its necessity at those visits (Exhibit 28F/50, 102). At an examination in late November, [Plaintiff] was using a cane, but an examination noted his gait was intact, as it was in prior exams with this provider (Ex. 30F/6). [Plaintiff's] use of a cane is documented more frequently and more consistently in visits after the established onset date, further supporting the finding that disability began at that time (Exhibits 32F/97-101; 36F; 59F/60, 82, 126; 60-62F).

(*Id.*) The ALJ reasoned that the fact "[t]hat Plaintiff requested and was prescribed a cane in 2019 is not conclusive evidence that he lacked the ability to stand and walk as necessary for light exertion work." (AR, Doc. No. 7-13 at PageID 3469.) The ALJ found that the balance of the evidence failed to support both Plaintiff's medical need for a cane and an "inability to stand and walk for about six hours in an eight-hour workday." (*Id.*)

Next, the ALJ explained that the treatment notes showed "significant worsening" that justified a change in Plaintiff's RFC on the established disability onset date. (*Id.* (citing AR, Doc. No. 7-10 at PageID 2566).) The ALJ also reasoned that as of January 2, 2020, Plaintiff "had exhausted conservative treatment but, despite diligently and successfully working to lose weight, his symptoms persisted." (*Id.*) The ALJ concluded: "For these reasons, the limitation to standing or walking for just two hours in a workday is not persuasive prior to January 2, 2020." (*Id.*)

## IV. LAW AND ANALYSIS

Plaintiff asserts that the ALJ erred in her analysis of the medical opinions of the state agency medical consultants. (SE, Doc. No. 10 at PageID 5815-18.) Plaintiff also asserts that the ALJ "failed to reconcile how the stand/walk limitation existed on after January 1, 2020." (*Id.* at PageID 5819-21.) For the reasons discussed below, Plaintiff's contentions are well-taken and the ALJ's decision should be reversed.

### A. The ALJ Reversibly Erred When Evaluating The Opinions Of The State Agency Medical Consultants.

#### 1. Applicable law

ALJs are required to analyze the persuasiveness of "***all*** of the medical opinions" in the record. 20 C.F.R. § 404.1520c (emphasis added). A "medical opinion" is a "statement from a medical source about what [an individual] can still do despite [his] impairment(s)" and whether the individual has one or more impairment-related limitations or restrictions. 20 C.F.R. § 404.1513(a)(2). By contrast, a statement from a medical source about an issue reserved to the Commissioner—such as whether an individual is disabled—need not be addressed by the ALJ. 20 C.F.R. § 404.1520b(c)(3).

Because Plaintiff filed his claim after March 27, 2017, the new regulations for evaluating medical opinion evidence applied. Under these regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) . . . ." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must evaluate the persuasiveness of each medical opinion and prior administrative medical finding by considering the following factors: (1)

10

supportability; (2) consistency; (3) relationship with the plaintiff; (4) specialization; and (5) any other factor "that tend[s] to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c).

The first two factors—supportability and consistency—are the "most important." 20 C.F.R. § 404.1520c(b)(2) (emphasis added). The supportability factor recognizes that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Therefore, an ALJ's supportability analysis addresses whether a medical professional has sufficient justification for their *own* conclusions. *See Crystal E.J. v. Comm'r of Soc. Sec.*, No. 2:21-CV-04861, 2022 WL 2680069 (S.D. Ohio July 12, 2022) (Preston Deavers, M.J.); *accord Burke v. O'Malley*, No. 8:23-cv-415, 2024 U.S. Dist. LEXIS 48944, *8 (M.D. Fla. Mar. 20, 2024) ("Supportability addresses the extent to which a medical source or consultant has articulated record evidence bolstering her own opinion or finding.").

The consistency factor, by contrast, recognizes that "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2). The ALJ's consistency analysis therefore must compare the medical opinion at issue to evidence from "*other* medical and nonmedical sources." *Ford v. Comm'r of Soc. Sec.*, No. 1:22-CV-00524, 2023 WL 2088157, at *17 (N.D. Ohio Jan. 31, 2023).

The distinction between the supportability and consistency factors is relatively clear when the opinion is from a treating provider. Providers commonly rely on the records in their possession—including progress notes, test results, statements from the claimant, and opinions from other medical providers—to support their medical opinions. An ALJ can readily identify a provider's records that purportedly support their opinion and use them to analyze supportability. Then, when analyzing consistency, the ALJ can readily compare the provider's opinion to opinions and evidence from *other* providers. Because each factor (supportability and consistency) considers different evidence, the reviewing court can easily determine whether the ALJ has addressed each factor.

It can be more challenging to distinguish between supportability and consistency when the opinion is from a state agency consultant. Because they do not have their own treatment records, consultants must review and rely upon documents in the administrative record to support their opinions. The ALJ will, however, consider documents from the same administrative record when analyzing both supportability and consistency. If the consultant's report clearly identifies the documents relied upon to support their opinions, then the ALJ can conduct a supportability analysis that is based on those documents. But if the consultant's report does not clearly identify the documents that support their opinions, then the ALJ's ability to conduct separate supportability and consistency analyses will be limited. *See Kenneth B. v. Comm'r of Soc. Sec.*, No. 3:22-cv-672, 2024 U.S. Dist. LEXIS 49191 (W.D. Ky. Mar. 19, 2024) (citing *Tyrone H. v. Comm'r of Soc. Sec.*, No. 2:22-cv-3652, 2023 WL 2623571, *6 (S.D. Ohio Mar. 24, 2023)).

12

Because they are the most important factors, the ALJ is required not only to consider the supportability and consistency of all medical opinions in the record, but also to "explain *how* he or she considered them."[6] *Dayna S. v. Comm'r of Soc. Sec.*, 3:21-CV-00326, 2023 WL 2009135, at *5 (S.D. Ohio Feb. 15, 2023) (Gentry, M.J.) (citing to 20 C.F.R. § 404.1520c(b)(2) (internal punctuation omitted and emphasis added)). No "specific level of detail" is required, as "the appropriate level of articulation will necessarily depend on the unique circumstances of each claim." *Timothy B. v. Comm'r of Soc. Sec.*, No. 2:22-CV-03834, 2023 WL 3764304, at *7 (S.D. Ohio June 1, 2023) (Bowman, M.J.) (internal citations omitted). Thus, ALJs need not use "magic words or any specific phrasing" to comply with the applicable regulations. *Id.*

Additionally, the determination of the RFC is a task reserved for the ALJ. 20 C.F.R. § 404.1546(c); *see also Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) ("[T]he ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an 'assessment of his [RFC]'"). A claimant's RFC describes the most he can do in a work setting despite his physical and mental limitations. 20 C.F.R. § 404.1545(a)(1). When formulating the RFC, the ALJ must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(4). The ALJ must base the RFC on all relevant evidence in the record, including the claimant's descriptions of his limitations and symptoms, objective medical evidence, medical opinions, other medical evidence, evidence from

---

[6] By contrast, the ALJ "may, but [is] not required to," explain the consideration given to the remaining factors. 20 C.F.R. § 404.1520c(b)(2).

13

non-medical sources, and prior administrative medical findings. *See* 20 C.F.R. § 404.1545(a)(1)-(5).

### 2. Consistency

The ALJ was only partially persuaded by the state agency medical consultants' opinions. (Decision, Doc. No. 7-13 at PageID 3468-69.) The ALJ explained that many of their opinions were "generally consistent with the underlying available medical evidence of record prior to the alleged onset date and further consistent with subsequently developed evidence prior to January 2, 2020." (*Id.* at PageID 3469.) However, the ALJ reasoned that the two-hour standing and walking limitation was "not . . . supported prior to January 2, 2020." (*Id.* at PageID 3469.)

Defendant argues that the ALJ adequately addressed the consistency factor because she considered "Plaintiff's imaging, physical examinations, and course of conservative treatment." (Mem. In Opp., Doc. No. 12 at PageID 5834.) However, although the ALJ explained her consideration of the consistency factor as required by 20 C.F.R. § 404.1520(c)(2), the ALJ's conclusion is unsupported by substantial evidence.

The ALJ acknowledged that Plaintiff's provider prescribed a cane in May 2019, but found that the medical evidence at that time did not support such a prescription. (*Id.*) The ALJ reasoned that subsequent progress notes did not show consistent use of an assistive device; Plaintiff's providers did not document difficulty standing or walking "at many visits in July through December 2019"; examinations showed "no musculoskeletal or neurological problems and [Plaintiff] was in no distress"; and Plaintiff "entirely denied musculoskeletal symptoms" at times in late 2019. (*Id.*) The ALJ acknowledged that

14

Veterans Administration providers observed Plaintiff walking with a cane at visits in July, November, and December of 2019. Nevertheless, she reasoned that the physical examinations did not show abnormalities to support the medical necessity of a cane. (*Id.*) After January 2, 2020, by contrast, the ALJ found that "[Plaintiff's] use of a cane is documented more frequently and more consistently in visits after the established onset date, further supporting the finding that disability began at that time (Exhibits 32F/97-101; 36F; 59F/60, 82, 126; 60-62F)." The ALJ concluded that because the treatment notes showed "significant worsening" by January 2, 2020, the two-hour standing and walking limitation was not warranted until that date. (*Id.*)

The undersigned concludes that the ALJ's analysis is not supported by substantial evidence. To support her conclusion that the standing/walking limitation was not required before January 2, 2020, the ALJ focused primarily on whether Plaintiff's use of a cane was medically necessary before that date. (Decision, Doc. No. 7-13 at PageID 3469.) The ALJ therefore conflated Plaintiff's medical need for a cane with his claimed inability to stand and walk for more than two hours in an eight-hour workday. But the two issues are not interchangeable. Even if he was not medically required to use a cane, Plaintiff's impairments still could have prevented him from standing and walking more than two hours during an eight-hour workday. *E.g., Thomas v. Colvin*, 534 F. App'x 546, 551 (7th Cir. 2013) ("[W]alking for 50 feet without a cane . . . does not demonstrate an ability to stand for 6 hours."). Without more, evidence that Plaintiff did not regularly use a cane does not constitute substantial evidence that Plaintiff was able to stand and walk for more than two hours during an eight-hour workday.

15

Defendant argues that the ALJ did not err because she did not focus "exclusively" on whether Plaintiff's use of a cane was medically necessary, and because the Appeals Council's order specifically directed her to "further evaluate Plaintiff's need for an assistive device for walking." (Mem. In. Opp., Doc. No. 12 at PageID 5833.) This argument is not persuasive. The Appeals Council's order directed the ALJ to further evaluate two *separate* issues: 1) the prior administrative findings of state agency medical consultants Dr. Bolz and Dr. Siddiqui; and 2) Plaintiff's RFC, particularly whether he needed an assistive device for walking. (AR, Doc. No. 7-14 at PageID 3544-45.) As noted, the ALJ appears to have conflated these issues.

Moreover, the evidence cited by the ALJ does not support her conclusions. The ALJ found that "[Plaintiff's] use of a cane is documented more frequently and more consistently in visits after the established onset date, further supporting the finding that disability began at that time (Exhibits 32F/97-101; 36F; 59F/60, 82, 126; 60-62F)." (Decision, Doc. No. 7-13 at PageID 3469.)" It is true that records prior to the established onset date documented only intermittent gait abnormalities such as an antalgic gait or walking with a limp or cane (AR, Doc. Nos. 7-7 at PageID 940; 7-9 at PageID 2166, 2175; 7-10 at PageID 2626, 2702; 7-11 at PageID 3011), as well as normal gait findings on several occasions. (*See, e.g.,* AR, Doc. Nos. 7-7 at PageID 943, 948, 1045, 1050, 1060; 7-8 at PageID 1410; 7-9 at PageID 2084, 2101, 2143, 2249.) But the cited records dated *after* January 2, 2020 do not establish that Plaintiff used his cane more frequently and consistently after that date.

16

The ALJ only provided pinpoint citations to four medical visits that occurred after the established disability onset date—in January 2020, July 2021, September 2021, and October 2021. (Decision, Doc. No. 7-13 at PageID 3469 (citing Exhs. 32F/97-101; 36F; 59F/60, 82, 126; and 60-62F).) On January 13, 2020—only three days after Plaintiff underwent a right total knee replacement—his physical therapist documented a slight antalgic gait pattern and noted that Plaintiff "[s]ometimes ambulates with cane in right hand due to pain in left knee." (AR, Doc. No. 7-11 at PageID 2826-27 (Ex. 32F/97-98).) On July 27, 2021, Plaintiff's primary care provider noted that he went "to room on own without difficulty with cane." (AR, Doc. No. 7-18 at PageID 4059 (Ex. 59F/126).) On September 20, 2021 and October 25, 2021, Plaintiff told his weight management health psychologist that he walks using a cane. (*Id*. at PageID 3993, 4015 (Ex. 59F/60, 82).)

The ALJ also generally cited to a fifty-page exhibit containing records dated between December 2019 and July 2020. (Decision, Doc. No. 7-13 at PageID 3469 (citing Ex. 36F).) On January 21, 2020, a nurse practitioner noted that Plaintiff's "[c]urrent assistive device is [a] cane," but did not document any gait abnormalities. (AR, Doc. No. 7-11 at PageID 3014, 3019-20.) Although Plaintiff used a cane during a February 2020 orthopedic visit, he had undergone left knee arthroscopy surgery a few days earlier. (AR, Doc. No. 7-11 at PageID 3029.) Plaintiff's provider observed that he used a cane in May 2020, but did not document any gait abnormalities. (AR, Doc. No. 7-11 at PageID 3036, 3041.) Plaintiff's provider eventually documented an antalgic gait in June 2020. (*Id.* at PageID 3049.) Plaintiff used a cane again in July 2020, but had undergone a left knee total arthroplasty just two weeks earlier. (*Id.* at PageID 3052.)

17

The ALJ cited three additional exhibits (Exhibits 60F, 61F and 62F) to support her conclusion that Plaintiff used a cane "more frequently and more consistently" after January 2, 2020. (Decision, Doc. No. 7-13 at PageID 3469 (citing AR, Doc. Nos. 7-19 at PageID 4093-4336; 7-20 at PageID 4338-581; 7-21 at PageID 4583-826).) Although each of these three exhibits contains well over two hundred pages, the ALJ failed to provide any pinpoint citations. (*Id.*) Nevertheless, the undersigned has reviewed the exhibits and concludes that they do not provide substantial evidence to support the ALJ's conclusions.

The records in Exhibit 60F are all dated before January 2, 2020. (*See* AR, Doc. No. 7-19 at PageID 4092.) These records therefore do not provide any evidence about Plaintiff's physical condition after that date.

Exhibit 61F contains one record that documented Plaintiff's use of a cane and a slow—but non-antalgic—gait. (AR, Doc. No. 7-20 at PageID 4393.) This record was from a visit in July 2020, a few weeks after Plaintiff's left total knee arthroplasty. On many other occasions after January 2020, Plaintiff's providers documented no gait abnormalities. (*See, e.g.*, *id.* at PageID 4340, 4356, 4371, 4377, 4406, 4422, 4449, 4484.)

Exhibit 62F contains only two records that mentioned Plaintiff's use of a cane. (*See* AR, Doc. No. 7-21 at PageID 4716, 4775.) In January 2021, Plaintiff reported during a weight management session that he walked with the use of a cane for exercise, and experienced "severe pain" if he walked for a mile. (AR, Doc. No. 7-21 at PageID 4716.) Plaintiff's provider did not document any gait abnormalities. (*Id.* at PageID 4716-21.) Plaintiff again reported in September 2021 that his exercise included walking with the use of a cane. (*Id.* at PageID 4775-80.) The progress note documented no significant

18

gait abnormalities. (*Id*.) Indeed, Plaintiff's primary care provider documented a normal gait and station in July 2021. (*Id.* at PageID 4815.)

When performing her consistency analysis, the ALJ also ignored significant evidence supporting the consultants' opinions that the two-hour standing/walking limitation applied prior to January 2, 2020. Specifically, the ALJ ignored medical records that documented Plaintiff's consistent complaints of—and consistent treatment for—back, hip, and knee pain prior to January 2, 2020. (AR, Doc. Nos. 7-7 at PageID 771, 786, 848, 854, 861, 928, 938, 942, 947, 1053, 1056; 7-8 at PageID 1317, 1369, 1497, 1513; 7-9 at PageID 2075, 2114, 2142, 2250; 7-10 at PageID 2487, 2504, 2511.)

The ALJ also failed to consider many other examination abnormalities that supported Plaintiff's subjective complaints and arguably supported the consultants' opinion that Plaintiff could stand and walk for no more than a total of two hours prior to January 2, 2020. Chiropractic progress notes from January 2018 documented decreased lumbar range of motion with dull pain, moderate bilateral sacroiliac articulation pain, moderate pain upon Kemp's testing, lumbar tenderness, and trigger points. (AR, Doc. No. 7-7 at PageID 1093-95.) Although Plaintiff's orthopedic surgeon noted in February 2018 that Plaintiff exhibited "no obvious limp," he observed that Plaintiff's right foot rotated laterally while walking and that heel-toe raises were "poorly executed." (AR, Doc. No. 7-7 at PageID 948.) The examination also showed slight left knee effusion medially, somewhat limited flexion of the knees due to Plaintiff's obesity, pain upon valgus and varus stressing of both knees, mild diffuse tenderness to palpation, decreased strength in the right foot and ankle, and bilateral crepitus. (AR, Doc. No. 7-7 at PageID 948.)

19

Plaintiff told his orthopedist in June 2018 that his back pain increased when he walked for longer than twenty minutes. (AR, Doc. No. 7-7 at PageID 771.) Upon a physical examination, Plaintiff ambulated with a slight varus deformity of the bilateral knees and with bilateral foot eversion, and he complained of pain upon internal rotation of the right hip. (*Id.* at PageID 773.) In July 2018, Plaintiff's pain management physician documented a slowed gait, as well as positive facet loading bilaterally and tenderness to palpation of the lumbar paraspinals and sacroiliac joint. (AR, Doc. No. 7-7 at PageID 929.) Numerous progress notes dated prior to January 2, 2020 documented findings that included decreased range of motion of the lumbar spine, tenderness of the right sacroiliac joint and knees, decreased range of motion and decreased strength of the right hip, decreased reflexes and deep tendon reflexes of the left hip, decreased strength in the legs, pain upon passive range of motion of the knees, decreased range of motion and crepitus of the knees, positive FABER and FADIR testing, positive straight leg raising on the right, a shortened stride pattern, and a slowed gait. (AR, Doc. Nos. 7-7 at PageID 848, 855-56, 1055, 1058, 1060, 1062; 7-8 at PageID 1372, 1403, 1456, 1500, 1510; 7-9 at PageID 2076, 2175; 7-10 at PageID 2509, 2511, 2546.)

Significantly, the ALJ did not consider these findings when she discounted the standing/walking limitation prior to January 2, 2020. (Decision, Doc. No. 7-13 at PageID 3469). Nevertheless, in her analysis of the records dated after January 2, 2020, she cited similar examination abnormalities to support her conclusion that Plaintiff's condition had worsened after that time. (Decision, Doc. No. 7-13 at PageID 3471.) The fact that these findings were also documented on many occasions prior to the established onset date

20

undermines the ALJ's conclusion that Plaintiff's condition did not support a two-hour standing/walking limitation until after January 2, 2020.

Similarly, the ALJ's conclusion that Plaintiff's treatment history does not support a two-hour standing/walking limitation prior to January 2, 2020 is unsupported by substantial evidence. Plaintiff tried numerous treatment measures before that date, including physical therapy, chiropractic treatment, a TENS unit, pain medications, applying heat and ace bandages, lumbar medial branch blocks, right sacroiliac joint injections, lumbar radiofrequency ablation procedures, Kenalog injections to both knees, Synvisc injections to both knees, lumbar epidural steroid injections, and right hip steroid injections. (AR, Doc. Nos. 7-7 at PageID 857, 924, 927, 928, 1029, 1058, 1073, 1097; 7-8 at PageID 1393, 1444, 1480, 1506, 1513; 7-9 at 2114; 7-10 at PageID 2477, 2541.) Plaintiff reported that this treatment did not work or provided only temporary relief. (AR, Doc. Nos. 7-7 at PageID 850, 854, 928, 938, 1060; 7-8 at PageID 1369, 1403, 1414, 1453; 7-9 at PageID 2075; 7-10 at PageID 2472, 2488, 2511; 7-11 at PageID 3005.) Yet the fact that Plaintiff consistently sought treatment (which provided no more than temporary relief) before undergoing knee and back surgeries, provides *more*—not less— support to the consultants' opinions that he could stand and walk no more than a total of two hours in an eight-hour workday prior to January 2, 2020.

In sum, the ALJ's analysis of the consistency factor is not supported by substantial evidence because it does not acknowledge or address significant evidence in the record that supports Plaintiff's pain complaints and the consultants' standing/walking limitation prior to January 2, 2020. The Court recognizes that the ALJ need not discuss each and

21

every piece of evidence and finding in the record. *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 437 n.11 (6th Cir. 2014). Nevertheless, the ALJ's "factual findings as a whole" must show she "implicitly resolved the conflicts in the evidence." *Id.* Here, the ALJ's apparent failure to consider many of the above-described records leads the Court to conclude that the ALJ did not resolve the conflicts in the evidence. Further, the ALJ's apparent failure to consider evidence that contradicts his conclusions signifies an impermissibly selective review of the record. *See Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723 (6th Cir. 2014) (reversing where the ALJ "cherry-picked select portions of the record"); *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (finding error where the ALJ was "selective in parsing the various medical reports")). The undersigned therefore recommends reversal.

### 3.    Supportability

Plaintiff argues that the ALJ "did not address the level of support or explanation provided by the state agency experts as was required." (SE, Doc. No. 10 at PageID 5817.) For the reasons discussed below, the undersigned finds that the ALJ did address the supportability factor, but her analysis is not supported by substantial evidence.

The ALJ stated that she was only partially persuaded by the state agency medical consultants' opinions, and she reasoned that the two-hour standing and walking limitation was "not . . . supported prior to January 2, 2020." (Decision, Doc. No. 7-13 at PageID 3469.) With this statement the ALJ arguably explained her consideration of the supportability factor as required by 20 C.F.R. § 404.1520c(c)(1). As discussed above, it can be more challenging to distinguish between supportability and consistency when

22

analyzing the opinions of state agency medical consultants because they do not have their own treatment records. If the consultants' reports clearly identify the documents relied upon to support their opinions, then the ALJ can conduct a supportability analysis that is based on those documents. In this case, the consultants clearly identified the medical evidence that they reviewed in the "Evidence of Record" section of the Disability Determination Explanation form. (AR, Doc. No. 7-3 at PageID 520-22, 552-57.) The consultants then listed the relevant findings from these records in the "Findings of Fact and Analysis of Evidence" section. (*Id.* at PageID 524-25, 559-60.) Next, the consultants provided explanations, with citations to Plaintiff's subjective complaints and to the objective evidence, to support their conclusions that Plaintiff's symptoms "appear[ed] consistent with the evidence in [the] file." (*Id.* at PageID 527-28, 562-67.) Finally, the consultants provided explanations for several of the physical limitations that they assessed in the physical RFC section of the form. (*Id.* at PageID 529-30, 563-65.) The ALJ was therefore able to conduct a supportability analysis based on the documents that the consultants identified and their supporting explanations.

However, the ALJ apparently did not consider the explanations the consultants gave to support their opinions. Significantly, Dr. Bolz indicated at the initial level that he based the two-hour standing and walking limitation on Plaintiff's "morbid obesity and back pain." (AR, Doc. No. 7-3 at PageID 529.) Dr. Siddiqui explained upon reconsideration that the limitation was based on "morbid obesity, moderate [degenerative joint disease of the right] knee, mild [degenerative joint disease of the left] knee, mild [degenerative joint disease of the bilateral] hips, and [degenerative disease of the] lumbar

spine and back pain." (*Id.* at PageID 564.) The ALJ did not mention these explanations or consider the combined effects of Plaintiff's impairments when she discounted the standing/walking limitation for the period prior to January 2, 2020. (Decision, Doc. No. 7-13 at PageID 3469.) Nor, as discussed above, did the ALJ consider whether records dated before January 2, 2020, supported the consultants' opinions that these physical conditions required a two-hour standing/walking limitation. The undersigned therefore finds that the ALJ's supportability analysis is not supported by substantial evidence.

Defendant argues that because the ALJ found the state agency medical consultants' opinions only partially persuasive, she was not required to adopt their assessed limitations verbatim. (Mem. In. Opp., Doc. No. 12 at PageID 5833.) It is true that although an ALJ is required to consider medical opinion evidence when determining the RFC, she is not required to adopt them or adopt any such findings verbatim. *Poe*, 342 F. App'x at 157. Even when an ALJ gives great weight to an opinion—which did not happen here—"there is no requirement that an ALJ adopt a state agency psychologist's opinion verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale." *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015). Nevertheless, "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." Social Security Ruling (SSR) 96-8p, 1996 SSR LEXIS 5, at *7 (S.S.A. July 2, 1996). Here, the ALJ did explain why she did not adopt the consultants' two-hour standing and walking limitation, but her conclusions are unsupported by substantial evidence. It is for this reason that the undersigned recommends reversal.

24

C.     **The ALJ's RFC For The Period Prior To January 2, 2020 Is Not Supported By Substantial Evidence.**

1.     **Applicable law.**

Determination of the RFC is a task reserved for the ALJ. 20 C.F.R. § 404.1546(c); *see also Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) ("[T]he ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an 'assessment of [her] residual functional capacity'"). A claimant's RFC describes the most he can do in a work setting despite his physical and mental limitations. 20 C.F.R. § 404.1545(a)(1). When formulating the RFC, the ALJ must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(4). The ALJ must base the RFC on all relevant evidence in the record, including the claimant's descriptions of his limitations and symptoms, objective medical evidence, medical opinions, other medical evidence, evidence from non-medical sources, and prior administrative medical findings. *See* 20 C.F.R. § 404.1545(a)(1)-(5).

The ALJ is required to consider evidence from the entire relevant time period when formulating the RFC. *E.g., White v. Comm'r of Soc. Sec.*, No. 3:21-cv-762, 2022 U.S. Dist. LEXIS 140674, *47 (N.D. Ohio June 1, 2022) (Knapp, M.J.), *affirmed by* 2022 U.S. Dist. LEXIS 139178 (N.D. Ohio Aug. 4, 2022) (Knepp, D.J.). As Magistrate Judge Knapp explained, "[w]hile the substantial evidence standard is deferential, the Sixth Circuit has emphasized that the chief limitation to that deference 'is the requirement that all determinations be made based upon the record in its entirety.'" 2022 U.S. Dist. LEXIS

140674, *47 (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007)).

Thus, an ALJ should not "unduly concentrate on one single aspect of the claimant's

history." *Rogers*, 486 F.3d at 249.

   Notably, "[t]he responsibility for determining a claimant's [RFC] rests with the

ALJ, not a physician." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009)

(citing 20 C.F.R. § 404.1546(c)). An ALJ is required to consider medical opinion

evidence when determining the RFC, but he is not required to adopt them or adopt any

such findings verbatim. *Poe*, 342 F. App'x at 156-57. In addition, "[t]he determination of

a plaintiff's RFC is entirely within the purview of the ALJ, and this Court will defer to

that finding even if there is substantial evidence in the record that would have supported

an opposite conclusion." *Rieder v. Comm'r of Soc. Sec.*, No. 2:20-CV-05858, 2021 WL

5881784, at *5 (S.D. Ohio Dec. 13, 2021) (internal quotations and citation omitted)

(Preston Deavers, M.J.).

   Nevertheless, an ALJ is required "to show his or her work." *Scott K. v. Comm'r of

the SSA*, No. 3:21-CV-00129, 2022 U.S. Dist. LEXIS 175673, at *11 (S.D. Ohio Sept.

27, 2022) (Silvain, M.J.) (internal citation omitted). Thus, "[t]his Court cannot uphold an

ALJ's decision, even if there if there is enough evidence in the record to support the

decision, where the reasons given by the trier of fact do not build an accurate and logical

bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875,

877 (N.D. Ohio 2011) (cleaned up) (internal quotations and citation omitted). *See also

Danyel P. v. Comm'r of Soc. Sec.*, No. 2:21-CV-02405, 2022 WL 1514170, at *6 (S.D.

Ohio May 13, 2022) (Preston Deavers, M.J.) (ALJ's "inexplicable and illogical

26

consistency" warranted remand); *Kimberly S. v. Comm'r of Soc. Sec.*, No. 3:21-CV-00310, 2022 WL 17820565, at *3 (S.D. Ohio Dec. 20, 2022) (Silvain, M.J.) (ALJs must "provide a coherent explanation of [their] reasoning . . . in order to provide sufficient rationale for a reviewing adjudicator or court"); *Hardiman v. Comm'r of Soc. Sec.*, No. 2:12-CV-00508, 2013 WL 3762266, at *5 (S.D. Ohio July 16, 2013) (Preston Deavers, M.J.) (remanding case on the ground that "the ALJ's decision is internally inconsistent and incomplete").

### 2. The ALJ did not build a logical bridge between the evidence of Plaintiff's impairments and the RFC.

The ALJ provided a detailed summary of the medical evidence relating to Plaintiff's physical condition prior to January 2, 2020. (Decision, Doc. No. 7-13 at PageID 3462-67.) But as outlined above, the ALJ's rationale for rejecting the consultants' two-hour standing and walking limitation prior to January 2, 2020 is unsupported by substantial evidence. The ALJ therefore did not build a logical bridge between the evidence of record and the RFC. The undersigned therefore concludes that the RFC, specifically for the time period prior to January 2, 2020, is not supported by substantial evidence. *Fleischer*, 774 F. Supp. 2d at 877. For this reason, too, the undersigned recommends reversal.

## V. REMAND

Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand

under Sentence Four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.,* 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is neither overwhelming nor strong while contrary evidence is lacking. *Faucher*, 17 F.3d at 176. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of Section 405(g) for the reasons stated above. On remand, the ALJ should further develop the record as necessary, particularly as to the medical opinion evidence and Plaintiff's physical condition prior to January 2, 2020, and evaluate the evidence of record under the applicable legal criteria mandated by the Commissioner's regulations and rulings and governing case law. The ALJ should evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether his applications for Disability Insurance Benefits and Supplemental Security Income should be granted.

**IT IS THEREFORE RECOMMENDED THAT**:

1.  Plaintiff's Statement of Errors (Doc. No. 10) be GRANTED;

2.  The Court REVERSE the Commissioner's non-disability determination;

3.  No finding be made as to whether Plaintiff was under a "disability" within the meaning of the Social Security Act;

4.   This matter be REMANDED to the Social Security Administration under Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Order; and

5.   This case be terminated on the Court's docket.

*s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days if this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).

29